

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-11-2007

# USA v. Turner

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1445

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Turner" (2007). *2007 Decisions*. Paper 1115.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1115

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NON-PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


Case No: 06-1445

UNITED STATES OF AMERICA

v.

RANDY TURNER,

Appellant

_____


On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No.: 2:05-cr-00146-001
District Judge: The Honorable David S. Cercone

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 11, 2007

Before: SMITH, NYGAARD, and HANSEN,[*] *Circuit Judges*

(Filed: May 11, 2007 )

_____

OPINION

_____

_____

[*]The Honorable David R. Hansen, Senior Circuit Judge of the United States
Court of Appeals for the Eighth Circuit, sitting by designation.

HANSEN, *Circuit Judge.*

Randy Turner pleaded guilty to a two-count indictment charging him with (1) possession with intent to distribute and distributing less than five grams of cocaine base (crack cocaine) in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C), and (2) possession with intent to distribute more than five grams of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(B). The District Court sentenced Turner to 188 months of imprisonment, the low end of the advisory Guidelines range. Turner appeals his sentence as unreasonable, and we will affirm.

Based on information from a confidential informant (CI) that Turner had been selling drugs from the CI's apartment for the previous six weeks, the Westmoreland County Drug Task Force arranged a controlled buy of crack cocaine from Turner. The Irwin, Pennsylvania, police also surveilled the CI's apartment on April 16, 2005, and observed seven individuals enter and leave the apartment in the span of one hour, consistent with drug trafficking.

The following day, an undercover officer carried out the controlled buy and purchased 2.6 grams of crack cocaine for $200 from Turner at the CI's apartment. As soon as the transaction was complete, other officers arrested Turner and executed a search of the apartment with the CI's consent. The search produced an additional 18

2

grams of crack cocaine located in the apartment. A grand jury returned the two-count indictment based on the quantity involved in the controlled buy and the additional crack found in the apartment. Turner pleaded guilty to both counts without the benefit of a plea agreement.

The District Court determined that Turner was a career offender based on a 1990 conviction for possession with intent to deliver heroin and cocaine and a 1997 conviction for possession with intent to deliver heroin. *See* United States Sentencing Guidelines Manual (USSG) § 4B1.1(a). Under that guideline, Turner's offense level was set at 31 (after a three-level adjustment for acceptance of responsibility), and he was placed in Criminal History Category VI, resulting in an advisory Guidelines range of 188-235 months. The District Court sentenced Turner at the bottom of the advisory range to 188 months of imprisonment.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We exercise jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). *See United States v. Cooper*, 437 F.3d 324, 327-28 (3d Cir. 2006).

On appeal, Turner challenges his sentence as unreasonable under *United States v. Booker*, 543 U.S. 220 (2005). Turner argues that the District Court gave presumptive weight to the Guidelines, particularly the career offender Guideline, and that the career offender Guideline, when combined with the 100:1 ratio sentencing

differential between crack and powder cocaine, makes his sentence unreasonable. He also challenges the constitutionality of the District Court's condition of supervised release requiring him to cooperate in the collection of DNA under the DNA Collection Backlog Elimination Act (DNA Act), 42 U.S.C. § 14135a-14135e, as an unreasonable search under the Fourth Amendment.

In reviewing Turner's challenge to the reasonableness of his sentence, we consider both whether the District Court considered the sentencing factors laid out in 18 U.S.C. § 3553(a) and whether the District Court reasonably applied the sentencing factors to the facts of the particular case. *Cooper*, 437 F.3d at 330. Our review nonetheless is deferential, and we decide only "'whether the district judge imposed the sentence he or she did for reasons that are logical and consistent with the factors set forth in section 3553(a).'" *Id.* (quoting *United States v. Williams*, 425 F.3d 478, 481 (7th Cir. 2005)).

We reject Turner's argument that the District Court gave presumptive weight to the advisory Guidelines range in setting his sentence. Post-*Booker*, the Guidelines "continue[] to play an integral part in sentencing decisions" and "provide a natural starting point for the determination of the appropriate level of punishment for criminal conduct." *Id.* at 331. The other § 3553(a) factors are to be given "meaningful consideration," but the district court need not make explicit findings as

4

to each § 3553(a) factor as long as the record reveals that the District Court took them into consideration.  *Id.* at 329. Within-Guidelines sentences are not presumptively reasonable in this circuit, but "[a] sentence that falls within the guidelines range is more likely to be reasonable than one outside the guidelines range."  *Id.* at 332. Further, the defendant still carries the burden of establishing that his sentence is unreasonable.

Although the District Court stated that it "was obligated to give [the Guidelines] considerable weight in fashioning an appropriate sentence" (Appellant's App. at 93), it did not give the Guidelines presumptive weight.  *See United States v. Lloyd*, 469 F.3d 319, 322-23 (3d Cir. 2006) (rejecting a claim that the district court's statement that the Guidelines were "deserving [of] great weight" indicated that the district court gave presumptive weight to the Guidelines where the district court considered all of the § 3553(a) factors and did not "feel shackled by the guidelines"). First, the District Court explicitly noted that the Guidelines are advisory.  (Appellant's App. at 93.)  Further, the District Court considered Turner's "extensive prior criminal record," finding him to be "clearly a career offender."  (*Id.* at 90.)  The District Court discussed several § 3553(a) factors that led to its sentencing decision, including the need to reflect the seriousness of the offense, the defendant's extensive prior criminal history, the need to promote respect for the law, to provide just punishment, and to

5

deter others, and Turner's need for rehabilitation. The record reveals that the District Court adequately considered all of the relevant § 3553(a) factors and did not give presumptive weight to the Guidelines.

Turner would have preferred that the District Court ignore the career offender Guidelines altogether and base his sentence on the quantity of drugs involved and his criminal history score, which would have placed him in category IV, without consideration for the career offender Guideline. While his prior convictions may not have been violent, the District Court was correct to apply the Guidelines as written and then determine whether the non-violent nature of his prior convictions mitigated toward a lesser sentence. *Booker* does not allow a district court to ignore the Guidelines wholesale; the District Court appropriately started with a properly-calculated Guidelines sentence in determining Turner's sentence. *See United States v. Grier*, 475 F.3d 556, 564-65 (3d Cir. 2007) (en banc) ("District courts must still conduct the full Guidelines analysis in every case. . . . The only change is that the final Guidelines range does not bind the district court, but merely serves as one of a number of factors to be considered in fashioning the ultimate sentence."); *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006) ("Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*.").

Turner also argues that his sentence is unreasonable based on the 100:1 crack/powder cocaine sentencing differential built into the Guidelines. We recently clarified that "[p]ost-*Booker* a sentencing court errs when it believes that it has no discretion to consider the crack/powder cocaine differential incorporated in the Guidelines-but not demanded by 21 U.S.C. § 841(b)-as simply advisory at step three of the post-*Booker* sentencing process (imposing the actual sentence after considering the relevant § 3553(a) factors)." *Gunter*, 462 F.3d at 249. We also made clear, however, that "the district court is under no obligation to impose a sentence below the applicable Guidelines range solely on the basis of the crack/powder cocaine differential," and that it may not "categorically reject the 100:1 ratio and substitute its own, as this is *verboten*." *Id.*

This case is distinguishable from *Gunter*, which involved use of the drug quantity table contained in USSG § 2D1.1(c) to calculate the defendant's advisory Guidelines sentencing range. *See id.* at 238-39 (explaining the large disparity between Guidelines ranges under USSG § 2D1.1 based on the difference between crack and powder cocaine). As detailed in *Gunter*, Congress established differing statutory minimum and maximum sentences in 21 U.S.C. § 841(b) based on the quantity of drugs involved in an offense and required one hundred times more powder cocaine than crack cocaine for inclusion in a particular statutory range. *Id.* at 239-40.

7

The Sentencing Commission "incorporated the ratio root and branch into its calculation of every cocaine offender's guideline sentencing range," *id.* at 248 (internal marks omitted), in establishing the drug quantity tables in USSG § 2D1.1(c), which *Gunter* held to be not binding under *Booker*, *id.*

Turner's advisory sentencing range was not based on the drug quantity table in USSG § 2D1.1(c). Rather, because he was a career offender, his advisory Guidelines range was calculated under USSG § 4B1.1, which establishes the defendant's offense level based solely on the statutory maximum penalty for the offense of conviction as set by Congress. Turner faced a statutory maximum of 40 years on Count 2, § 841(b)(1)(B), resulting in an offense level of 34 (before adjustments for acceptance of responsibility), USSG § 4B1.1(b)(B). Had Turner's offense involved 18 grams of powder cocaine instead of crack cocaine, he would have faced a statutory maximum of 20 years, § 841(b)(1)(C), with a resulting offense level of 32, USSG § 4B1.1(b)(C). This two-level difference is not based on the 100:1 ratio built into the Guidelines in § 2D1.1, the concern at issue in *Gunter*, but rather on the 100:1 ratio used by Congress in § 841(b) to establish the applicable statutory maximum sentences for drug crimes. Of course, once the appropriate advisory Guidelines range was established under the career offender Guideline, the district court was then free to treat that range as advisory under *Booker*.

8

The record reveals that the District Court treated the Guidelines as advisory once it correctly calculated the advisory Guidelines range and appropriately considered the relevant factors under § 3553(a). The District Court considered Turner's arguments about his age and his drug addiction and reasonably relied on his extensive criminal record and past involvement in drug trafficking in sentencing Turner within the Guidelines range. Turner's 188-month sentence is reasonable.

Turner did not challenge the District Court's imposition of the supervised release special condition requiring him to cooperate in DNA collection; we therefore review his Fourth Amendment constitutional challenge for plain error. *See United States v. Pojilenko*, 416 F.3d 243, 249 n.6 (3d Cir. 2005). We have previously held that the DNA Act survives Fourth Amendment scrutiny. *See United States v. Sczubelek*, 402 F.3d 175, 182-87 (3d Cir. 2005), *cert. denied*, 126 S. Ct. 2930 (2006). Turner has thus failed to establish that imposing the special condition of cooperating in DNA collection under the DNA Act plainly violated his constitutional rights. *See Pojilenko*, 416 F.3d at 249 n.6 (noting that "any error is not 'plain' when it was not 'clear under current law'").

We will affirm the District Court's judgment of sentence.