

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-12-2007

# USA v. Sanchez

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3258

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Sanchez" (2007). *2007 Decisions.* Paper 775.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/775

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-3258
_____

UNITED STATES OF AMERICA

v.

ISAISA SANCHEZ,

Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 05-cr-00123-1)
District Judge:  Honorable Cynthia M. Rufe
_____

Submitted Under Third Circuit LAR 34.1(a)
June 18, 2007

Before:  McKEE, FISHER and CHAGARES, *Circuit Judges*.

(Filed: July 12, 2007)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Isaisa Sanchez pleaded guilty to conspiracy to distribute more than one kilogram

of heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846.  He was sentenced to

300 months imprisonment, which was 60 months below the advisory United States

Sentencing Guidelines ("Guidelines") range.  On appeal, he asks us to find that his sentence was unreasonable.  We decline to do so and, for the reasons set forth below, will affirm the District Court's judgment of sentence.

I.

Because we write exclusively for the parties, who are familiar with the factual and procedural history of this case, we will set out only those facts necessary to our analysis. Sanchez was the co-founder and leader of an organization that distributed heroin in Allentown, Pennsylvania.  The parties stipulated that during its approximately three-year existence, the organization distributed at least ten kilograms of heroin.  Based on his participation in this organization, Sanchez was charged with seventeen other defendants in a multi-count indictment alleging a conspiracy to distribute heroin.  Sanchez pleaded guilty to one count of conspiracy to distribute over one kilogram of heroin in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846.

At a subsequent sentencing hearing, the District Court determined that Sanchez's base offense level, based on distribution of twenty-nine kilograms of heroin, was 36.  It increased that base offense level by two levels for the use of firearms in connection with the offense, *see* U.S. Sentencing Guidelines Manual § 2D1.1(b)(1), and by an additional four levels as a result of Sanchez's leadership role, *see id.* § 3B1.1.[1]  After a three-level reduction for acceptance of responsibility, *see id.* §§ 3E1.1(a) & (b), Sanchez's total

---

[1]The District Court denied the Government's motion for a two-level increase for obstruction of justice.  The Government does not appeal that determination.

offense level was calculated to be 39.[2]  With an uncontested criminal history category of

IV, Sanchez's advisory Guidelines range was between 360 months and life imprisonment.

*See id.* § 5A.

After the District Court completed the initial Guidelines calculations, both Sanchez

and the Government presented evidence and argument for the District Court to consider

when calculating Sanchez's sentence pursuant to 18 U.S.C. § 3553.  Sanchez primarily

presented testimony regarding his troubled childhood, focusing in particular on the fact

that Sanchez's father was shot in front of him due to a narcotics dispute and died in

Sanchez's arms.  Sanchez also testified that he was deeply sorry for his actions and

promised that he would turn away from a life of crime if he was given a lenient sentence.

The Government responded with testimony indicating that Sanchez lied to authorities,

was a fugitive from justice for approximately five months, and led a drug organization

that was involved in a shoot-out that injured an innocent bystander.

After hearing arguments, the District Court imposed a sentence of 300 months

based on the following determinations.  Sanchez did, indeed, have a difficult childhood.

However, considering Sanchez had seen his father assassinated because of his

involvement in the drug trade, Sanchez's decision to become involved in narcotics

himself was inexcusable.  That decision ultimately led to the creation of a substantial

---

[2]While Sanchez originally objected to the two-level increase for use of firearms in connection with the offense, he withdrew that objection at the sentencing hearing.  There was no objection to the four-level increase for a leadership role.

heroin distribution ring that was inherently violent. In addition, Sanchez had a less-than-pristine record with law enforcement. Sanchez's history with law enforcement officials was replete with dishonesty and attempts to avoid capture and incarceration. In addition, on each of Sanchez's numerous previous visits to prison, he had failed to follow rules, had violated parole and had shown a general inability to return to anything but a life of crime after release. The District Court determined that a substantial sentence was necessary to deter Sanchez from future violations and to deter others in the community "who think they can make a quicker buck and a bigger buck [by selling drugs] than working in a factory . . . ." Such a substantial sentence would also protect the community from the dangers inherent in dealing and using heroin. While the sentences imposed on Sanchez's numerous co-defendants were less than Sanchez's, the District Court found that these disparities were warranted considering Sanchez's leadership role and his co-defendants' early cooperation with federal authorities. After considering all of these factors, the District Court determined that a 300-month sentence – 60 months below the low end of the advisory Guidelines range – was reasonable.

Sanchez timely filed this appeal.[3]

---

[3]Following the filing of this appeal, the District Court filed a memorandum explaining, in further detail, its reasons for imposing the 300-month sentence.

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C.

§ 3742. We review the ultimate sentence imposed by a district court for reasonableness.

*United States v. Booker*, 543 U.S. 220, 261 (2005).

## III.

The only claim that Sanchez makes on appeal is that his sentence is unreasonable

under the factors set out in 18 U.S.C. § 3553(a).[4] When reviewing a sentence for

[4]The factors to be considered are:

(1) the nature and circumstances of the offense and the history and
characteristics of the defendant;
(2) the need for the sentence imposed--
    (A) to reflect the seriousness of the offense, to promote respect for
    the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational
    training, medical care, or other correctional treatment in the most
    effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for--
    (A) the applicable category of offense committed by the applicable
    category of defendant as set forth in the guidelines--
        (i) issued by the Sentencing Commission pursuant to section
        994(a)(1) of title 28, United States Code, subject to any
        amendments made to such guidelines by act of Congress
        (regardless of whether such amendments have yet to be
        incorporated by the Sentencing Commission into amendments
        issued under section 994(p) of title 28); and
        (ii) that, except as provided in section 3742(g), are in effect
        on the date the defendant is sentenced; or
    (B) in the case of a violation of probation or supervised release, the
    applicable guidelines or policy statements issued by the Sentencing

reasonableness, we undertake a three-step process.  We consider, first, whether the

Guidelines range was properly calculated, asking, second, whether a district court

properly ruled on any formal motions for departure.  *United States v. Gunter*, 462 F.3d

237, 247 (3d Cir. 2006).  Finally, we consider whether a district court properly exercised

its discretion by considering the § 3553(a) factors.  *Id.*  As Sanchez does not appeal the

calculation of his Guidelines range, our discussion will focus exclusively on this third

step.

When determining whether a district court gave meaningful consideration to the

§ 3553(a) factors, we are cognizant of our position as a court of review.  "The question is

not how we ourselves would have resolved the factors identified as relevant by section

---

> Commission pursuant to section 994(a)(3) of title 28, United States
> Code, taking into account any amendments made to such guidelines
> or policy statements by act of Congress (regardless of whether such
> amendments have yet to be incorporated by the Sentencing
> Commission into amendments issued under section 994(p) of title
> 28);
>
> (5) any pertinent policy statement--
> > (A) issued by the Sentencing Commission pursuant to section
> > 994(a)(2) of title 28, United States Code, subject to any amendments
> > made to such policy statement by act of Congress (regardless of
> > whether such amendments have yet to be incorporated by the
> > Sentencing Commission into amendments issued under section
> > 994(p) of title 28); and
> > (B) that, except as provided in section 3742(g), is in effect on the
> > date the defendant is sentenced. [FN1]
>
> (6) the need to avoid unwarranted sentence disparities among defendants
> with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

3553(a) . . . nor what sentence we ourselves ultimately might have decided to impose." *United States v. Cooper*, 437 F.3d 324, 332 (3d Cir. 2006) (citing *United States v. Williams*, 425 F.3d 478, 481 (7th Cir. 2005)). Rather, we simply inquire as to whether the sentencing judge imposed the sentence for "reasons that are logical and consistent with the factors set forth in section 3553(a)." *Id.*

In this case, we do not hesitate to find that the District Court imposed a logical, consistent and, ultimately, reasonable sentence. The District Court addressed each of the § 3553(a) factors in detail, taking into consideration Sanchez's personal and criminal history, his role in the offense, the need for rehabilitation and deterrence, as well as society's need for protection. The District Court's thorough oral decision, even without the detailed memorandum it later provided, shows serious consideration of the § 3553(a) factors and a well-reasoned determination of the appropriate sentence. Contrary to Sanchez's contentions on appeal, the District Court did take Sanchez's troubled childhood into consideration when determining his sentence and properly regarded the nature of the heroin ring and Sanchez's involvement. In short, the sentence imposed by the District Court – 60 months below the advisory Guidelines range – is not greater than necessary to achieve the goals set forth in § 3553(a). *See* 18 U.S.C. § 3553(a).

Therefore, we will affirm the District Court's judgment of sentence.